## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 5:19-cr-40101-HLT** |
| **DWAYNE ALLEN ZINN,** | |
| **Defendant.** | |

### MEMORANDUM AND ORDER

Defendant Dwayne Allen Zinn moves to suppress evidence and statements obtained during execution of a search warrant. Doc. 71. He argues that the affidavit supporting the search warrant omitted material information, that the search warrant did not cover an RV that was searched, and that statements he made after his arrest were not voluntary. The Court finds that the affidavit sufficiently stated probable cause, even considering the omitted information, and that the warrant's description of the "premises . . . utilized" by Defendant sufficiently described the RV found during the search. Additionally, the totality of the circumstances demonstrates that Defendant's incriminating statements were voluntary. Accordingly, the Court denies Defendant's motion.

## I.    BACKGROUND[1]

In August 2019, DEA agents in Topeka, Kansas, received information from DEA officials in Phoenix, Arizona, that packages of methamphetamine were being sent through the mail to 3524 SE California Avenue in Topeka. In response, DEA Special Agent Olberding began spot

---

[1]    On October 9, 2020, the Court held a hearing on Defendant's motion and heard testimony from Drug Enforcement Administration Special Agent Justin Olberding, and admitted Government Exhibits 1-2 and the exhibits attached to Defendant's motion to suppress (Doc. 71-1, Doc. 71-2, Doc. 71-3, and Doc. 71-4). Based on Special Agent Olberding's demeanor and attentiveness during questioning, the Court credits his testimony in its entirety, but only relays those portions of the testimony relevant to the resolution of the motion to suppress.

surveillance of the address. Throughout August and September, Special Agent Olberding observed the driveway, house, and garage from one or two blocks away. From his position, he could observe most of the driveway and the front of the house and detached garage. But he could not see the back door or behind the garage and was unable to see the back of the property from other vantage points.

Special Agent Olberding conducted surveillance at least ten times, for one to two hours each time. On at least eight of those occasions, he observed what he described as high traffic at the residence, which he described as short visits by more than three cars within a one-hour timeframe. Based on his experience, Special Agent Olberding believed the high volume of short visits indicated that drugs were being distributed from the residence. On at least eight occasions, Special Agent Olberding observed either Defendant (whom he believed to be named Dwayne Allen) or Daniel Miller at the property.

On September 30, 2019, while conducting surveillance, Special Agent Olberding and Shawnee County Sheriff's Office personnel observed a silver Chevrolet Trailblazer arrive at the residence. An unknown individual—later identified in the warrant affidavit as the Cooperating Defendant ("CD")—got out and stood in the driveway. Defendant came out of the rear door of the residence and approached the CD. Special Agent Olberding observed the CD put something in his right front pocket and leave in the Trailblazer.

After the CD left in the Trailblazer, Shawnee County Sheriff deputies attempted a traffic stop. The Trailblazer failed to stop. But law enforcement soon found the CD on foot a couple blocks away and found the Trailblazer abandoned. They took the CD into custody, read his *Miranda* rights, and searched him. Officers found one gram of methamphetamine on him, which the CD said he had obtained from an individual known as Dwayne. Special Agent Olberding showed him a picture of Defendant, and the CD identified him as Dwayne. The CD offered to take

Special Agent Olberding to where he had obtained the methamphetamine. The CD gave directions and pointed out the residence at 3524 SE California Avenue. The CD said that both Miller and Defendant distributed methamphetamine from the residence, the driveway, and the detached garage, and that the CD had bought methamphetamine from Defendant and Miller at least 20 times in the past two months.

Special Agent Olberding then sought a search warrant for "The Premises of: 3524 SE California Ave., Topeka, Kansas, utilized by Dwayne ALLEN and Daniel Miller, detached garage and associated vehicles." The affidavit detailed Special Agent Olberding's surveillance of the property (including the high volume of short visits by numerous individuals and his observation of the CD's visit to the property), that the CD had been found with methamphetamine shortly after a visit to the property, and the CD's statements about purchasing methamphetamine at the property. The affidavit noted that the CD was "currently cooperating in hopes of receiving judicial consideration on a possible State of Kansas, possession of methamphetamine charge" but that the CD had "not been made any promises of judicial leniency." The affidavit also indicated that the CD is an admitted methamphetamine user.

But the affidavit did not state that the CD was on probation in Shawnee County for a felony conviction of attempted robbery, which included a 21-month prison sentence if the CD violated conditions of probation. The affidavit also omitted the CD's prior conviction for identify theft. Special Agent Olberding ran the CD's criminal history before applying for the search warrant. But he did not include this information because he was relying primarily on his own observations.

The search warrant was issued on September 30 at around 2pm. It was executed around 5pm that same day. During the search all individuals in the house were removed to the driveway, handcuffed, and provided water if needed. After the property was secured, officers discovered an

RV parked behind the detached garage, which had not been visible during surveillance. The RV was somehow attached to the garage, but Special Agent Olberding could not recall exactly how, other than that power cords were running to the RV from the detached garage. The inside of the RV was very cluttered, and it did not appear that anyone could sleep in it. The RV did have power, however. It is not clear who owned the RV.

At some point during the search, Special Agent Olberding questioned Defendant for approximately three minutes, which was audio recorded. Special Agent Olberding advised Defendant of his *Miranda* rights before questioning. At the time he was questioned, Defendant was in custody and handcuffed, but he was still in the driveway of the house. During questioning, Defendant identified which bedroom was his and indicated that the methamphetamine and guns found there were his. He also said that he was prohibited from having a firearm and that he had got the methamphetamine "downtown" for personal use. Special Agent Olberding stopped questioning Defendant after Defendant asked for an attorney. A grand jury subsequently indicted Defendant for possession with intent to distribute and a firearm charge.

## II.   ANALYSIS

In his motion to suppress, Defendant argues that material information was omitted from the warrant affidavit and that the warrant did not cover the search of the RV. He also challenges the voluntariness of his statements to law enforcement.

### A.   Omissions from the Search Warrant Affidavit

Defendant's first argument is that the affidavit supporting the search warrant omitted information about the CD's criminal history. Affidavits supporting search warrants are generally entitled to a presumption of validity. *Franks v. Delaware*, 438 U.S. 154, 171 (1978). To be entitled to an evidentiary hearing under *Franks*, a defendant must allege that the affidavit contains an

intentional misrepresentation or omission and must support those allegations with evidence.[2] *Id.* To warrant relief under *Franks*, a defendant must show by a preponderance of the evidence that (1) an affidavit contains an intentional or reckless misrepresentation or omission that (2) is material to issuance of the warrant. *United States v. Moses*, 965 F.3d 1106, 1110 (10th Cir. 2020). If both recklessness and materiality are shown, a court must suppress the evidence obtained by the search warrant. *Franks*, 438 U.S. at 156.

In evaluating this argument,[3] the Court starts with the information that was included in the affidavit. In the affidavit, Special Agent Olberding stated that he received information from the DEA that 3524 SE California Avenue was a destination and distribution point for methamphetamine. He then conducted surveillance on the property at least ten times over the course of two months. On at least eight of those occasions, he observed Defendant and Miller at the property, and observed "multiple vehicles and unknown individuals arrive at the residence, remain at the residence a short period of time and depart the residence." Based on Special Agent Olberding's experience and training, which was detailed in the affidavit, these short visits were indicative of drug transactions. Then, on September 30, Special Agent Olberding observed the CD and Defendant have an interaction in the driveway, where the CD appeared to put something in his pocket. Shortly thereafter officers stopped the CD and found methamphetamine in his pocket. The CD then told officers that Defendant had provided him with the methamphetamine in the

---

[2]   The government argues that Defendant has failed to make the initial showing that would entitle him to a *Franks* hearing. But because the Court was already hearing evidence on the other issues raised in the motion to suppress, it opted to hear evidence on the *Franks* issue as well, which is within its discretion to do. *See United States v. Herrera*, 782 F.3d 571, 573 (10th Cir. 2015) ("Nothing in [*Franks*] or the logic on which it rests suggests a district court must forswear an evidentiary hearing unless the defendant's motion makes one constitutionally compulsory.").

[3]   Defendant's motion also argues that the amount of methamphetamine found on the CD was misrepresented in the affidavit. But Defendant withdrew that argument after understanding the discrepancy between grams and gross grams.

driveway of 3524 SE California Avenue, that Defendant and Miller distribute methamphetamine from the property, and that the CD had purchased or traded for methamphetamine from Defendant and Miller on at least 20 occasions. The affidavit also stated that the CD was a self-admitted methamphetamine user and that he was cooperating in hopes of receiving judicial consideration on a possible possession charge but had not been promised judicial leniency.

Although Special Agent Olberding had run the CD's criminal history before completing the affidavit, he did not include that the CD was currently on probation for a felony conviction for attempted robbery, which included a 21-month sentence if the CD violated probation, *see* Doc. 71-3 and Doc. 71-4, or that the CD had a prior conviction for identify theft, *see* Doc. 71-2. The Court therefore evaluates whether Special Agent Olberding recklessly or intentionally omitted this information, and whether it was material to the issuance of the warrant.

> **1.      There are no facts evidencing recklessness in the omission of information from the search warrant affidavit.**

On the first element, Defendant has presented no information that Special Agent Olberding <u>recklessly</u> omitted information about the CD's criminal history.[4] Instead, Defendant argues that the Court can infer recklessness because the omitted facts were critical to the finding of probable cause. Doc. 71 at 9. Although the omission of facts under particularly egregious circumstances may warrant such an inference, such an inference is not automatic or mandatory just because information was omitted. *Kapinski v. City of Albuquerque*, 964 F.3d 900, 908 (10th Cir. 2020).

The Court does not find sufficiently egregious facts to infer recklessness in this case. Here, Special Agent Olberding candidly testified that he ran the CD's criminal history before writing the affidavit. But he said he did not include the CD's full history in the affidavit because he believed

---

[4]   Defendant does not argue intentional omission. But for the same reasons discussed above, the Court does not find that Special Agent Olberding intentionally omitted any information.

the CD's statements merely corroborated his own observations, which he was primarily relying on in the affidavit, as opposed to the CD's credibility. The Court finds this testimony credible and does not discern any reckless intent in not including the CD's criminal history. The Court notes that the affidavit still included some facts going to the CD's credibility, including that he frequently bought and used methamphetamine and that he was cooperating in hopes of getting judicial leniency on a possession charge. This supports a conclusion that Special Agent Olberding was not trying—recklessly or otherwise—to mislead regarding the CD's credibility. *See id.* at 908.

### 2.    The omitted information was not material to probable cause.

Nor does the Court find that the omitted information was material to issuance of the warrant. To determine materiality, a court considers whether the affidavit would still support probable cause if the omitted information had been included. *Moses*, 965 F.3d. at 1113. If the omitted information negates probable cause, the omission is material. *See id.* Probable cause is determined by whether the totality of the circumstances establish a "fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* (internal quotations omitted).

The Court finds that the affidavit would have still supported probable cause if Special Agent Olberding had included the omitted information about the CD's criminal history. First, the affidavit was not dependent on the credibility of the CD. It was largely based on Special Agent Olberding's own observations after learning information from the DEA that methamphetamine was being sent to and distributed from 3524 SE California Avenue. He observed the property multiple times over two months and observed several instances that indicated to him, based on his training and experience, that drug transactions were occurring. These suspicions were confirmed when Special Agent Olberding observed the CD meet with Defendant and put something into his

pocket, which was revealed to be methamphetamine when officers stopped the CD shortly thereafter. The CD's statements merely corroborated Special Agent Olberding's direct observations. Accordingly, detailed statements about the CD's credibility would not have been essential to a finding of probable cause because probable cause was not dependent on the CD's statements. *See United States v. Danhauer*, 229 F.3d 1002, 1006 (10th Cir. 2000) ("When there is sufficient independent corroboration of an informant's information, there is no need to establish the veracity of the informant.").

Second, the affidavit did include information about the CD's credibility. The affidavit made clear that the CD was an admitted methamphetamine user and that he was cooperating in hopes of receiving leniency on a drug-possession charge. Although the additional information about the CD's criminal history would have perhaps provided more information about the CD's credibility, it would have been largely cumulative and unlikely to negate probable cause, especially given Special Agent Olberding's own observations. *See United States v. Avery*, 295 F.3d 1158, 1167-68 (10th Cir. 2002) (noting that a failure to mention an informant's detailed criminal history would not have affected issuance of the warrant because the magistrate had been put on notice about the informant's past drug use and other criminal activity), *abrogated on other grounds by United States v. O'Brien*, 560 U.S. 218, 235 (2010).

Accordingly, because there were no reckless and material omissions, the Court denies Defendant's motion to the extent it seeks to suppress the fruits of the search warrant under *Franks*.

**B.      Search of the RV**

Defendant's second argument is that the search of the RV exceeded the scope of the search warrant because it did not describe with particularity the RV as a place to be searched. On this point, Defendant seeks suppression of the methamphetamine found in the RV.[5]

Under the Fourth Amendment, warrants must be based on probable cause and describe "particularly" the place to be searched and the people or things to be seized. U.S. Const. amend. IV. The particularity required depends on the facts of the case. *United States. v. Williamson*, 1 F.3d 1134, 1136 (10th Cir. 1993). "Practical accuracy" controls whether a search warrant adequately describes the place to be search as opposed to "technical precision." *Id.* (internal quotations omitted). The ultimate question is whether the place to be searched is described with enough particularity that "the executing officer can locate and identify it with reasonable effort." *Id.* at 1135-36 (internal quotations omitted).

The affidavit and search warrant described the place to be searched as "The Premises of: 3524 SE California Ave., Topeka, Kansas, utilized by Dwayne ALLEN and Daniel Miller, detached garage and associated vehicles." It did not mention the RV. This is because Special Agent Olberding was not aware there was an RV on the property until it was discovered behind the garage during execution of the warrant. The RV was not viewable from where Special Agent Olberding conducted surveillance. Who owns the RV is not known.[6] Special Agent Olberding testified that

---

[5]    Defendant does not seek to suppress all the evidence found during the search—just the evidence found in the RV. Doc. 71 at 19. In his motion, Defendant states that approximately 30 grams of methamphetamine were found. At the hearing, the parties clarified that less than one gram was found during the search of the RV.

[6]    At the hearing, the Court raised this issue and whether it would affect Defendant's standing to challenge the search of the RV, but neither party has addressed the issue in the briefing. Although it is Defendant's burden to establish standing, the government has not challenged Defendant's standing to challenge the search of the RV, likely because the government's position is that the RV could be considered part of the premises "utilized" by Defendant. As discussed below, there is evidence supporting this conclusion, including the location of the RV and statements by Miller.

the RV was attached to the garage in some way, possibly by power cords, though he could not recall exactly how it was attached. The RV did have power, but it was cluttered and did not appear to have anyone living in it. Special Agent Olberding could not recall any other facts about the RV, including what type of RV it was or whether it was operational.

### 1.    There are no facts regarding whether the RV could be considered a "vehicle" under the search warrant.

Defendant first argues that the search of the RV was not covered by the warrant's reference to vehicles because an RV is not a typical vehicle and because there are no facts in this case indicating that the RV was being used as a vehicle. Doc. 71 at 20. Defendant relies primarily on *United States v. Briscoe*.

In *Briscoe*, the warrant covered the "residence, outbuildings and vehicles" at an address. *United States v. Briscoe*, 2017 WL 1908594, at *1 (D. Kan. 2017). Officers knew of the existence of the RV before seeking a search warrant[7] and knew that it was occupied. *Id.* The defendants were found sleeping inside the RV at the time of the search. *Id.* After the defendants challenged the search of the RV as exceeding the scope of the warrant, the government argued the search was authorized because the RV is a "vehicle." *Id.* at *2. The court in *Briscoe* disagreed, noting the RV was not a typical vehicle, the defendants were sleeping in the RV at the time of the search, and that officers knew about the RV and that the defendants were occupying it before executing the search warrant. Based on these facts, the defendants had a reasonable expectation of privacy and the RV required a separate warrant. *Id.* at *6; *see also State v. Martini*, 799 P.2d 184, 185-86 (Or. Ct. App. 1990) (finding a search of a travel trailer exceeded the scope of a warrant where officers knew of the existence of the trailer before executing the warrant and where the trailer had extension

---

[7]    The original order in *Briscoe* stated that law enforcement learned of the existence of the RV after the search warrant was obtained but before it was executed. But an order on reconsideration clarified that law enforcement observed the RV before the affidavit was filed. *United States v. Briscoe*, 2017 WL 2591633, at *1 (D. Kan. 2017).

cords running to it and a dog tied to the door); *Rodgers v. State*, 264 So. 3d 1119, 1123 (Fla. Dist. Ct. App. 2019) (suppressing the search of an RV with an awning and septic line affixed to the ground, connected to the main house by utility lines, and registered to and occupied by a third party who was present and refused entry to officers).

The Court notes that the facts in this case are distinct from the facts in *Briscoe*, as Defendant's counsel forthrightly acknowledged at the hearing. Here, there is no indication that anyone was living in the RV (even though it maybe had power) or that officers knew of the existence of the RV before they discovered it during execution of the search warrant. Those facts were significant to the determination in *Briscoe* that "the RV is not a typical 'vehicle'" and that the defendants had a reasonable expectation of privacy in it. *Briscoe*, 2017 WL 1908594, at *6.

But the Court also agrees with Defendant that there are no facts in the record to suggest that the RV here should be considered a "vehicle" under the terms of the warrant. Other than the fact that the parties all describe it as an RV—a recreational <u>vehicle</u>—there are almost no facts describing the RV in this case at all, including what type of RV it was (i.e. self-propelled or a type that had to be towed), whether it was operational or movable, whether it was licensed, or when it had last been moved. To the contrary, the testimony at the hearing was that the RV was functioning more like a storage building than a vehicle. *Compare United States v. Houck*, 888 F.3d 957, 961 (8th Cir. 2018) (finding officers' conclusion that an RV was a vehicle to be reasonable where it had fully inflated tires, could be mobile in 30 minutes, was parked in a driveway next to a truck that could tow it, and was not permanent affixed to any structure).[8] Based on these facts, the Court cannot conclude that the warrant's reference to "vehicles" covered the RV.

---

[8] Other than a brief suggestion that the RV <u>could</u> be considered a vehicle, the government does not clearly argue that the RV fell within the scope of the warrant by its use of the word "vehicles." Doc. 78 at 10-11.

2.    **The search warrant's reference to the "premises" of the address was sufficiently particular to include the RV discovered during execution of the search.**

Defendant instead argues that the RV in this case "was more like a building and less like a vehicle." Doc. 71 at 21. Because it was not described with particularity in the search warrant, Defendant maintains it was outside the scope of the search. *Id.* at 20-21. The government responds that the search warrant adequately described the RV because the warrant described the place to be searched as the "premises" of 3524 SE California Avenue being "utilized" by Defendant and Miller and the RV falls within that description. Doc. 78 at 10-11.

Where a warrant extends to the curtilage of the residence, it extends to structures found within the curtilage. *See Rodgers*, 264 So. 3d at 1122;[9] *see also United States v. Griffin*, 827 F.2d 1108, 1114-15 (7th Cir. 1987) (holding that "premises" extends to the land and buildings on the land, even if only specific structures are mentioned); *cf. United States v. Montgomery*, 527 F.3d 682, 687 (8th Cir. 2008) ("Police may lawfully search all buildings, containers, and vehicles on the property to be searched in which the contraband sought might be found."). The Tenth Circuit has also recognized that a search of fixed premises can extend into separate areas within those premises, even if separate acts of entry and opening are required. *See United States v. Smith*, 363 F. App'x 629, 632 (10th Cir. 2010).

---

[9]    This does not necessarily extend to other <u>dwellings</u> on the property. *Rodgers*, 264 So. 3d. 1122. As explained above, there are no facts that Defendant or anyone else was living in the RV. The Court also notes that the Tenth Circuit has held that a search warrant for the "premises" described only by a subdivision lot description does not necessarily extend to the residence on that lot. *United States v. Dahlman*, 13 F.3d 1391, 1395 (10th Cir. 1993) (noting that a warrant referring to "premises" but only describing the property by lot number is not specific enough to covers search of residence on the property); *but see United States v. Williams*, 687 F.2d 290, 293 (9th Cir. 1982) (holding that reference in warrant to "premises" extended to buildings and structures on land); *United States v. Meyer*, 417 F.2d 1020, 1023 (8th Cir. 1969) (holding that the word "premises" extends to the land and the buildings on the land). *Dahlman* also indicated that a warrant specifically authorizing the search of buildings at a particular address is distinguishable. *Dahlman*, 13 F.3d at 1395.

This logic extends to RVs, campers, and trailers. *See United States v. Napoli*, 530 F.2d 1198, 1200 (5th Cir. 1976) (finding that a search of the "premises" of a street address extended to a camper in the driveway); *United States v. Noriega*, 1993 WL 83508, *2 (9th Cir. 1993) (holding that search warrant for the "premises" of an address extends to all parts, even though a motor home searched was not described in the warrant); *Norman v. State*, 931 S.W.2d 96, 98-99 (Ark. 1996) (upholding the search of a small camper trailer where the warrant covered "premises" and "the definition of the term 'premises' includes both the land of the property and the buildings and structures thereon"); *cf. United States v. Sturmoski*, 971 F.2d 452, 458 (10th Cir. 1992) (finding that search warrant extended to search of horse trailer found within the curtilage even though trailer was not specifically identified in warrant because search of "premises" extends to vehicles within the curtilage);[10] *but see Martini*, 799 P.2d at 186 (rejecting argument that a travel trailer is an "outbuilding").

Based on this, the Court finds that the search of the RV falls within the description of the place to be searched stated in the warrant, namely the "premises" of 3524 SE California Avenue utilized by Defendant and Miller. The RV was functioning as a storage building on the property, and Special Agent Olberding had reason to believe it was being utilized by Defendant and Miller, both because Miller told officers it was being utilized by Defendant and because of the location of the RV. He testified that the RV was somehow attached to the detached garage, which was specifically mentioned in the warrant as a place to be searched. Although the RV itself was not

---

[10] In *Sturmoski*, the Tenth Circuit noted that the "search team discovered the horse trailer within the curtilage of the premises described by the search warrant." *Sturmoski*, 971 F.2d at 458. But it also referred to the horse trailer as a vehicle. *Id.*; *see also United States v. Gottschalk*, 915 F.2d 1459, 1461 (10th Cir. 1990) (holding that a "search warrant authorizing a search of a certain premises generally includes any vehicles located within its curtilage if the objects of the search might be located therein"). To the extent the RV in this case could be considered a vehicle, these cases would suggest that the search of the RV would be proper under the terms of the warrant. But as noted above, there are no facts that would support that conclusion.

specifically mentioned in the warrant, that was because its existence was not known until after the search warrant was executed. Accordingly, the Court finds that the search warrant's description of the premises of 3524 SE California Avenue utilized by Defendant and Miller was sufficiently particular, in that it sufficiently described the premises at a specific address and all known structures at that address. Officers' conclusion that this description covered the RV was reasonable.

### C.    Voluntariness of Defendant's Statements

Defendant's third argument challenges the voluntariness of his statement to law enforcement. When a defendant objects to admission of incriminating statements, he is entitled to a hearing on the voluntariness of his confession. *Jackson v. Denno*, 378 U.S. 368, 380 (1964). The voluntariness of a statement is based on the totality of the circumstances. *United States v. Toles*, 297 F.3d 959, 965-66 (10th Cir. 2002). Factors considered include the "(1) the age, intelligence, and education of the defendant; (2) the length of detention; (3) the length and nature of the questioning; (4) whether the defendant was advised of his constitutional rights; and (5) whether the defendant was subjected to physical punishment." *Id.* at 966. "While no factor alone is dispositive, a movant seeking suppression of a confession faces an uphill battle if he was *Mirandized*." *United States v. Ravenell*, 810 F. App'x 625, 629 (10th Cir. 2020).

Here, Defendant makes no specific arguments in his motion about how his statements to police were not voluntary and instead holds the government to its burden of proving voluntariness. The Court finds the government has met its burden.

All Defendant's incriminating statements were recorded, and that recording was played at the hearing. Defendant was 57 years old at the time and answered all questions appropriately. During the questioning, Defendant acknowledged his criminal history, and thus he would have been experienced in dealing with law enforcement. Defendant was in custody at the time he

answered questions. The questioning lasted only approximately three minutes and occurred in the driveway of his home during daylight hours. Although the SWAT team initially had to break down the door to execute the search warrant, Defendant's statements to law enforcement were made after all individuals had been removed from the house. While he was questioned, Defendant was handcuffed and either sitting on some stones near the driveway or in a chair. Water was available to Defendant. Two law enforcement officers—Special Agent Olberding and Shawnee County Sergeant Glenn Hawks—were present, and both were wearing street attire and had taken off their raid gear. Sergeant Hawks may have had an open-carry holster, but Special Agent Olberding's weapon was concealed. There is no evidence that either officer brandished his weapon at any point during questioning. Although Special Agent Olberding told Defendant that he was facing serious federal charges, his tone was conversational. Defendant was advised of his constitutional rights and read his *Miranda* warnings before he answered any questions. Although he initially answered questions, when he asked for an attorney, all questioning stopped. There is no indication or allegation that Defendant was subjected to physical punishment.

Under these circumstances, the Court finds that Defendant's incriminating statements to law enforcement were voluntary.

## III.   CONCLUSION

THE COURT THEREFORE ORDERS that Defendant's Motion to Suppress Evidence (Doc. 71) is DENIED.

IT IS SO ORDERED.

Dated: October 30, 2020                    /s/ *Holly L. Teeter*
                                           HOLLY L. TEETER
                                           UNITED STATES DISTRICT JUDGE