## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**UNITED STATES OF AMERICA,**

     **Plaintiff,**

     **v.**

**DWAYNE ALLEN ZINN,**

     **Defendant.**

**Case No. 5:19-cr-40101-HLT-2**

## MEMORANDUM AND ORDER

Defendant Dwayne Allen Zinn is charged with possession with the intent to distribute a controlled substance and possession of a firearm by a prohibited person. He moves to dismiss with prejudice both counts of the indictment on either a finding of due process error or under this Court's inherent supervisory power because the government presented false testimony to the grand jury that prejudiced him. Doc. 94 at 1. Because the government did not deliberately attempt to influence the grand jury by presenting false testimony, the Court denies the motion.

## I.    BACKGROUND[1]

Officers received information that Zinn and Daniel Miller were possible methamphetamine distributors and executed a search warrant on their residence on September 30, 2019. Officers found about three ounces of suspected methamphetamine in the upstairs bedroom. And in the basement bedroom they found approximately one ounce of suspected methamphetamine and

---

[1]   During an evidentiary hearing held on April 21, 2021, the Court heard testimony from Justin Olberding, Special Agent with the Drug Enforcement Agency. Based on Agent Olberding's demeanor and attentiveness during questioning—and given that, at times, he conceded facts not helpful to the government's case—the Court credits his testimony in its entirety. But the Court relays only those portions of his testimony relevant to its resolution of the motion. The Court also admitted Government Exhibit 1 and the attachments to Zinn's motion (Doc. 94-1, 2).

$1,908 in a safe and two firearms under some clothing by a cabinet. Agent Olberding then spoke

with Zinn in a recorded post-*Miranda* interview. The following conversation occurred:

> Q:     All right. So this is your house, you live here?
>
> A:     Yes.
>
> Q:     Is the downstairs basement bedroom yours?
>
> A:     Yes.
>
> Q:     Okay. We found meth and a gun in that bedroom. You're
>         prohibited, correct?
>
> A:     Yes, sir.
>
> Q:     Okay. Whose meth is that?
>
> A:     It's mine.

Doc. 94-1 at 2 and Government Exhibit 1.[2]

Agent Olberding later testified to a grand jury about this case. He was the government's

only witness. He testified that officers received information that Zinn and Miller were possible

methamphetamine distributers and executed a search warrant on September 30, 2019, at their

residence. Agent Olberding testified that officers found $1,908 and approximately one ounce of

suspected methamphetamine in a safe in Zinn's basement bedroom. He testified that officers also

found a Winchester 12-gauge shotgun and a Keystone Sporting Arms .22 caliber rifle in a corner

of Zinn's bedroom. Agent Olberding then testified that Zinn was "subsequently Mirandized and

admitted that the methamphetamine located in the basement safe was his, as well as the firearms."

Doc. 94-2 at 3. He later testified that Zinn "acknowledged that the firearms were his" and that

"[h]e did acknowledge that he was a prohibited possessor when we interviewed him." *Id.* at 4.

---

[2]   The parties agree in the briefing and confirmed on the record at the evidentiary hearing that the transcriptionist
made an error and that the above-quoted language is correct. The Court agrees with the parties after listening to
the recording. Zinn also indicates that he received the grand jury transcript on the morning of the motion to suppress
hearing.

Agent Olberding reported that the firearms had travelled in interstate commerce and added that Zinn had convictions for possession of opiates and for cultivation, distribution, possession with intent to distribute opiates, opioids or narcotic stimulants that prohibited him from possessing a firearm.

Agent Olberding also testified to the grand jury about the three ounces of suspected methamphetamine found in Miller's bedroom. He testified that Miller stated in a post-*Miranda* interview that he received the methamphetamine from Zinn for distribution purposes. Agent Olberding noted that both amounts of methamphetamine were distribution quantities. A member of the grand jury asked a clarifying question, which Agent Olberding answered. The grand jury returned an indictment charging Zinn and Miller with possession with intent to distribute methamphetamine and charging Zinn with possession of a firearm by a prohibited person. Doc. 1.

Zinn filed a motion to suppress last year, and the Court held an evidentiary hearing. Agent Olberding testified on cross-examination at that hearing as follows:

> Q:    So you didn't do that detailed inventory with Mr. Miller?
>
> A:    Mr. Miller stated the upstairs bedroom was his, where the methamphetamine was located in the bucket. Mr. Zinn stated, post-Miranda warning interview, that the basement bedroom was his. He acknowledged that the firearms were his, and he acknowledged that the methamphetamine located in the basement was his.
>
> Q:    When he acknowledged the firearms, that's on the recording?
>
> A:    I would have to listen to the audio recording. He acknowledged that he was prohibited from having firearms.
>
> Q:    Did he say anywhere else – the majority of Mr. Zinn's statements that were incriminating are on that audio recording?
>
> A:    Yes, sir.

Q:      You don't recall any other statement while you were
        walking, I mean, where he just blurts out, "Hey, that was also
        mine," or something like that?

A:      No, sir.

Q:      So everything is on the recording?

A:      The incriminating statements to the questions I asked him
        are on the recording.

Doc. 80 at 52-53. The Court later denied the motion to suppress. Doc. 81.

Zinn now moves to dismiss both counts of the indictment because Agent Olberding falsely testified to the grand jury that Zinn admitted possession of the firearms. Doc. 94. The Court held another evidentiary hearing on this motion, and Agent Olberding again testified. Agent Olberding admitted that Zinn never admitted that the firearms were his and that Zinn had only acknowledged that he was a prohibited possessor.

He also described his observations from his post-*Miranda* interview with Zinn. Agent Olberding testified that Zinn's demeanor during the interview was not standoff-ish and that Zinn was being cooperative but not exactly forthcoming. Agent Olberding noted that Zinn would look at him when he was speaking to him and that Zinn would give a verbal or affirmative yes as well as a head nod. Agent Olberding testified that, based on his training and experience, he took these observations to mean that Zinn was being honest and showing signs of guilt. He further explained that based on his training and experience people confronted about firearms or methamphetamine that is not theirs will typically state that it is not theirs. He noted that Zinn never denied ownership of the firearms found his bedroom during the interview but did distance himself from the methamphetamine in Miller's room. Agent Olberding testified that his understanding after the interview and the totality of the investigation was that Zinn acknowledged that the firearms found in the basement bedroom were his. When asked about his grand jury testimony, Agent Olberding

explained that it was a summary of the investigation and what he believed Zinn had stated at the time. He testified that he was not attempting to mislead the grand jury.

## II.    ANALYSIS

Zinn moves to dismiss with prejudice both counts of the indictment based on the presentation of false testimony to the grand jury on a material question of fact. He contends that Agent Olberding falsely told the grand jury two different times that Zinn admitted possession of the firearms and that this false testimony prejudiced him. He asks the Court to dismiss both counts on either a finding of due process error or under the Court's inherent supervisory power.

A court may dismiss grand jury indictments on either a finding of due process error or under the court's inherent supervisory power over the administration of justice. *United States v. Kilpatrick*, 821 F.2d 1456, 1475 (10th Cir. 1987). Dismissal of a grand jury indictment based on a claimed due process error is appropriate when the conduct might properly be characterized as transgressing the defendant's right to fundamental fairness. *United States v. Lopez-Gutierrez*, 83 F.3d 1235, 1245 (10th Cir. 1996). Dismissal of a grand jury indictment based on a court's inherent supervisory power is appropriate when the "misconduct amounts to a violation of one of those few, clear rules which were carefully drafted and approved by [the Supreme Court] and by Congress to ensure the integrity of the grand jury's functions." *United States v. Williams*, 504 U.S. 36, 46 (1992) (internal quotation omitted). But a court may not dismiss an indictment under either standard for errors in the grand jury proceedings "unless such errors prejudiced the defendants." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254-56 (1998) (internal quotation omitted).[3]

---

[3] Although they disagree on other aspects, the parties agree that the prejudice prong is governed by *Bank of Nova Scotia*.

The two standards vary slightly but a review of Supreme Court and Tenth Circuit case law reveals two principal issues for the Court: (1) did the government deliberately attempt to influence the grand jury by presenting false testimony, and (2) if so, did the presentation of the false testimony prejudice Zinn. *See Bank of Nova Scotia*, 487 U.S. at 260-61 (finding no prosecutorial misconduct because some doubts about testimony is "quite different from having knowledge of falsity" and outlining prejudice standard); *Williams*, 504 U.S. at 46 n.6 (discussing types of misconduct); *United States v. Crockett*, 435 F.3d 1305, 1316 (10th Cir. 2006) (explaining that the defendant failed to demonstrate a deliberate attempt to unfairly sway the grand jury with false testimony); *Lopez-Gutierrez*, 83 F.3d at 1245 (explaining that witness was mistaken and "[n]othing in the record suggests that [the witness] intended to unfairly sway the jury"); *United States v. Brown*, 2020 WL 7828767, at *5-6 (D. Kan. 2020) (denying motion to dismiss because no evidence that officer's misleading testimony  was intentional or that the government knew it was misleading); *United States v. Cooper*, 396 F. Supp.3d 992, 995 (D. Kan. 2019) (reviewing case law and finding that the "common thread in these cases is that they require a showing the government deliberately attempted to influence the grand jury with false testimony").

**On the first issue**, the Court finds that Agent Olberding's testimony to the grand jury was technically inaccurate because Zinn did not verbally admit or acknowledge during the post-*Miranda* interview that the firearms in the basement bedroom were his, *compare* Doc. 94-1 at 2-3 (with correction noted above) to Doc. 94-2 at 3-4, but neither Agent Olberding nor the government deliberately attempted to influence the grand jury through the presentation of this testimony. Instead, the Court finds that Agent Olberding was merely mistaken in his testimony and the government did not discern the mistake.

The Court reaches this conclusion for several reasons. First, the Court credits Agent Olberding's testimony at the April 2021 evidentiary hearing about his observations of Zinn's demeanor during the post-*Miranda* interview and his understanding of the interview based on the totality of the investigation. Agent Olberding explained his training and experience in interviewing individuals. He then noted that Zinn looked down, nodded his head, and appeared remorseful during the interview. Agent Olberding testified that Zinn never denied ownership when confronted about the firearms but did distance himself from the three ounces of methamphetamine found in Miller's bedroom. And he explained that based on the totality of the investigation he had understood Zinn to acknowledge that the firearms were his. The Court credits his explanation and this testimony.

Second, Agent Olberding testified consistently with this understanding at both the grand jury hearing and the 2020 suppression hearing. Although these hearings took place months apart, Agent Olberding testified consistently at both. And he gave the same testimony at the 2020 motion to suppress hearing despite the presence of defense counsel and the Court. His consistent testimony at both hearings reinforces his honestly held but mistaken understanding that Zinn acknowledged the firearms were his during the post-*Miranda* interview and his lack of intent to mislead the grand jury.

Third, Zinn offers no evidence that either Agent Olberding or the prosecutor knew his testimony before the grand jury was technically inaccurate. Agent Olberding testified that he listened to the recording before the grand jury hearing, but there is no direct evidence that the prosecutor did. Both heard the recording at the 2020 motion to suppress hearing, yet Agent Olberding still testified consistently with his grand jury testimony. This lends credibility to his understanding of the post-*Miranda* interview because it would be extremely unwise for a career

law enforcement officer and a government prosecutor to present deliberately false testimony to the Court during a motion to suppress hearing when all participants had just listened to the recording. This is buttressed by the fact that no one objected to Agent Olberding's testimony at that 2020 hearing, suggested it was false, or asked to have the recording replayed to demonstrate his error. Even the Court did not discern the error until the instant motion despite listening intently to both the recording and his testimony at that hearing. *Compare Brown*, 2020 WL 7828767, at *6 (holding that a prosecutor's failure to correct the officer was an oversight at worst considering that it took a frame-by-frame review of video footage to confirm that the officer could not have seen the driver), *with Cooper*, 396 F. Supp. 3d at 996 (finding a close call when the government had reviewed a medical report finding no signs of penetration but did not correct an agent's testimony on the report stating the opposite).

Fourth, and finally, Agent Olberding admitted the technical inaccuracy of his testimony when confronted with the instant motion. He and the government conceded the mistake and explained the basis for Agent Olberding's grand jury testimony. He denied any attempt to mislead the grand jury, and Zinn offers little except the government's possession of the recording to suggest the prosecutor deliberately attempted to influence the grand jury with the inaccurate testimony.

The Court recognizes that portions of the April 2021 hearing are a bit difficult to follow. But the Court's firm conclusion is that Agent Olberding mistakenly understood Zinn to have acknowledged the firearms were his during the post-*Miranda* interview and that neither Agent Olberding nor the government knew about this inaccuracy. Agent Olberding testified to this understanding at the grand jury. He again offered this testimony to the Court at the 2020 suppression hearing. And once the error was raised in the instant motion, he and the government conceded the mistake but credibly explained the basis for his testimony. On this record, Zinn has

8

not shown that either Agent Olberding or the government knew that Agent Olberding's grand jury testimony was technically inaccurate such that the Court can conclude that the failure to correct the mistake indicates a deliberate attempt to influence the grand jury with false testimony. Zinn makes a handful of arguments against this outcome. But none are compelling. For these reasons, the Court denies the motion.

**On the second issue**, even if Zinn established deliberateness, the Court would still deny the motion because Zinn fails to show prejudice. The parties agree that prejudice in this context requires either a finding that the violation "substantially influenced the grand jury's decision to indict" or a finding that "there is a grave doubt that the decision to indict was free from the substantial influence of such violations." *Bank of Nova Scotia*, 487 U.S. at 256 (internal quotation omitted).[4]

The Court cannot make either finding for the felon in possession count. The statute makes it a crime for any person who has been previously convicted in any court of a felony to knowingly possess any firearm in or affecting interstate commerce. 18 U.S.C. § 922(g). Possession can be actual or constructive. *United States v. Jameson*, 478 F.3d 1204, 1209 (10th Cir. 2007). Zinn contends the inaccurate testimony prejudiced him because it constitutes an admission on the knowing-possession element. But even without the inaccurate testimony, Agent Olberding testified that the firearms were found in Zinn's basement bedroom in a corner by a closet. He testified about Zinn's criminal history, which prohibited Zinn from having a firearm, and he testified that the two firearms had travelled in interstate commerce. Based on this testimony, the

---

[4]   Making deliberately false statements is not the type of case "in which the structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the presumption of prejudice." *Bank of Nova Scotia*, 487 U.S. at 256-57 (giving example of discrimination in the selection of grand jurors).

Court finds that Zinn fails to show either type of prejudice. *Compare United States v. Washington*, 162 F.3d 1175, at *3-4 (10th Cir. 1998) (holding that a witness's testimony was not so misleading that dismissal was warranted when he asserted or implied that the defendant admitted ownership—despite the defendant neither expressly admitting or denying ownership—when there was a great deal of other evidence), *with Cooper*, 396 F. Supp. 3d at 995-96 (D. Kan. 2019) (dismissing indictment after witness testified that a medical exam showed signs of penetration when it said the opposite).[5]

The Court reaches the same conclusion for the possession with intent to distribute charge. Zinn argues that Agent Olberding's inaccurate firearms testimony prejudiced him because of the association between firearms and drug distribution. The Court disagrees. Agent Olberding testified that law enforcement found an ounce of suspected methamphetamine and $1,908 in the safe in Zinn's bedroom. Zinn admitted that the methamphetamine was his. Law enforcement also found over three ounces of suspected methamphetamine in Miller's bedroom. Agent Olberding testified that both amounts were distribution quantities. The grand jury heard Miller's post-*Miranda* statement that he had received the methamphetamine from Zinn to distribute. There was no testimony before the grand jury of the association between drug distribution and firearms. In any event, Agent Olberding's testimony that Zinn admitted the firearms were his could add little to his testimony that law enforcement found two firearms propped in a corner of his bedroom, as discussed above. Therefore, the Court finds that the inaccurate testimony also did not prejudice

---

[5]   At the evidentiary hearing, Agent Olberding testified that Zinn's room was cluttered and that the firearms were covered by one or two t-shirts. He also testified that Miller admitted that he had a .22 caliber rifle in his bedroom. The only .22 caliber rifle found was in Zinn's bedroom. Law enforcement was unable to move items stacked from the floor to the ceiling in Miller's bedroom and so never verified whether it contained a firearm. To the extent this presents an issue for resolution, the Court also finds that Agent Olberding's omission of this information before the grand jury was not a misrepresentation of the evidence and did not prejudice Zinn.

Zinn on this count. Accordingly, for the alternative reason that Zinn was not prejudiced by any error, the Court denies his motion to dismiss.[6]

## IV.     CONCLUSION

In sum, the Court finds that Agent Olberding gave technically inaccurate testimony but that neither he nor the government offered that testimony in a deliberate attempt to influence the grand jury. Even if the Court is wrong on this point, the Court alternatively finds that the inaccurate testimony did not prejudice Zinn based on the other evidence in the record.

THE COURT THEREFORE ORDERS that Zinn's Motion to Dismiss (Doc. 94) is DENIED.

IT IS SO ORDERED.

Dated: May 24, 2021                          /s/ *Holly L. Teeter*
                                             HOLLY L. TEETER
                                             UNITED STATES DISTRICT JUDGE

---

[6]   Even if the Court determined that dismissal of the indictment was appropriate, it would do so without prejudice because "dismissal without prejudice is ordinarily the appropriate remedy for prejudicial prosecutorial misconduct during grand jury proceedings." *Cooper*, 396 F. Supp. 3d at 996 (quoting *United States v. Slough*, 679 F. Supp. 2d 55, 61 (D.D.C. 2010)). Dismissal of the indictment without prejudice would put Zinn in the position he would have been in but for the violation. *See Slough*, 679 F. Supp. 2d at 61. And the social costs of giving him permanent immunity regarding his alleged criminal conduct would be too high. *Id.* at 61-62.